UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No: 8:21-cr-377-KKM-AEP

ALVARO MONTERO-MONSAVLO,
    a/k/a "Papa"

Defendant.
_____

## ORDER

In 2019, Alvaro Montero-Monsalvo was working as a logistics coordinator for a Columbian drug smuggling operation. USA Resp. to Mot. to Dismiss (Doc. 33) at 3–4 (USA Resp.). After U.S. authorities interdicted a vessel smuggling cocaine with which Montero-Monsalvo was believed to be involved, a federal grand jury indicted him on a single count of conspiring to violate the Maritime Drug Law Enforcement Act (MDLEA). 46 U.S.C. §§ 70503(a)(1), 70506(b); Indictment (Doc. 1) at 1. Having been extradited to the United States, USA Resp. at 4, he now moves to dismiss that indictment on the grounds the MDLEA exceeds Congress's powers both as applied to him and on its face and that his prosecution violates due process. *See* Mot. to Dismiss (Doc. 28). Because his arguments lack merit and are largely foreclosed by circuit precedent, his motion to dismiss is denied.

## I. BACKGROUND

On August 27, 2019, U.S. Coast Guard authorities aboard a Dutch vessel encountered the *Maria Purisima*, a fishing boat flying a Venezuelan flag, about forty-two nautical miles off the Venezuelan coast. USA Resp. at 1–2; Bartram Cert. (Doc. 33-1) ¶ 4(b). As the Dutch vessel approached, the *Maria Purisima* jettisoned several packages. USA Resp. at 1–2; Bartram Cert. ¶ 4(b). These packages were later recovered and discovered to be bales of cocaine weighing over three hundred kilograms in total. USA Resp. at 2; Bartram Cert. ¶ 4(c). The United States requested and received permission from the Government of Venezuela to board the *Maria Purisima* to enforce U.S. law. Bartram Cert. ¶¶ 4(e)–(f). Once aboard, U.S. officials arrested the crewmembers. USA Resp. at 3. U.S. authorities later identified Montero-Monsalvo as a member of the conspiracy to traffic controlled substances aboard the *Maria Purisima*, though at no time was he aboard the boat outside Venezuela's territorial waters. USA Resp. 3–4. Montero-Monsalvo was indicted and later extradited to the United States, and he now moves to dismiss his indictment. *See* Mot. to Dismiss.

## II. LEGAL STANDARD

An indictment is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). At any time, a defendant may move to dismiss an indictment on the ground that the Court lacks jurisdiction. *See*

FED. R. CRIM. P. 12(b)(2). "Under [Criminal Rule] 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).

## III. ANALYSIS

The MDLEA is an exercise of Congress's enumerated power "[t]o define and punish . . . Felonies committed on the high Seas," sometimes called the "Felonies Clause." U.S. CONST. art. I, § 8, cl. 10; *see also United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020) ("[T]he MDLEA is a valid exercise of Congress's power under the Felonies Clause as applied to drug trafficking crimes."). It punishes, among other things, conspiracy to "manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance" aboard a vessel to which the MDLEA applies. 46 U.S.C. §§ 70503(a)(1), 70506(b). Montero-Monsalvo maintains that his indictment under this provision is unconstitutional. He is mistaken.

### A. Congress May Punish Maritime Drug Trafficking Conspirators Even if They Are Never on the High Seas

Montero-Monsalvo contends that, because he was never "on the high seas" aboard the *Maria Purisima* and the Felonies Clause grants Congress the power to punish only crimes "on the high seas," the government cannot constitutionally apply the MDLEA's conspiracy provisions to him. Mot. to Dismiss at 3–5. That argument ignores the Necessary

3

and Proper Clause, U.S. CONST. art I, § 8, cl. 18, which "grants Congress broad authority to enact federal legislation" to implement its enumerated powers, *United States v. Comstock*, 560 U.S. 126, 133 (2010) (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316, 405 (1819) (Marshall, C.J.)). Under that clause, Congress may pass laws that employ means "*rationally related* to the implementation of a constitutionally enumerated power" to achieve that other power's ends. *United States v. Belfast*, 611 F.3d 783, 804 (11th Cir. 2010) (quoting *Comstock*, 560 U.S. at 134).

Congress may lawfully punish land-based members of maritime drug conspiracies because doing so is rationally related to its power to punish felonies on the high seas. While landward coordinators and planners might not themselves embark on drug-smuggling voyages, they are equally participants in maritime crime as the mariners. "[T]he conspirators most likely to control, direct, finance, and profit from such drug trafficking are more apt to remain on land than to venture on the seas." *United States v. Alarcon Sanchez*, 972 F.3d 156, 167 (2d Cir. 2020). Because punishing landward coordinators is "conducive" to preventing drug trafficking on the high seas, it falls within the power permitted to Congress under the Necessary and Proper Clause to accomplish the Felonies Clause's ends. *Belfast*, 611 F.3d at 804 (quoting *Comstock*, 560 U.S. at 134).

Punishing a maritime crime's land-based conspirators also has roots in the early Republic. In the United States's first criminal code, the First Congress made it unlawful to

give aid to piracy, robbery, and murder upon the seas, regardless of whether any "aiding," "commanding," or "advising" of those crimes took place "*upon the land or the sea*." Crimes Act of 1790, ch. 9, § 10, 1 STAT. 112, 114 (emphasis added). While not "a guarantee of a statute's constitutionality," *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 450 (2023) (Thomas, J., dissenting), "[t]he practice of the First Congress" can "'provide[] contemporaneous and weighty evidence of the Constitution's meaning.'" *CFPB v. Cmty. Fin. Servs. Ass'n of Am.*, 601 U.S. 416, 432 (2024) (quoting *Bowsher v. Synar*, 478 U.S. 714, 723 (1986)). And here, Montero-Monsalvo presents no contrary historical evidence that would cast doubt on Congress's power to punish his behavior. The prohibition of land-based conduct advancing maritime crime in the 1790s is further evidence that Congress may lawfully apply the MDLEA to Montero-Monsalvo.

Under the Felonies Clause and the Necessary and Proper Clause, Congress may punish landward conspiracy to traffic controlled substances on the high seas. Montero-Monsalvo's first argument fails.

### B. Montero-Monsalvo's Other Arguments Fail

Montero-Monsalvo argues that because the *Maria Purisima* was interdicted within Venezuela's "Exclusive Economic Zone" (EEZ), rather than on the "high seas," the Felonies Clause cannot provide a constitutional basis for his prosecution. Mot. to Dismiss at 5–13. After Montero-Monsalvo filed his motion, the Eleventh Circuit resolved this

5

issue—the EEZ is part of the "high seas." *United States v. Alfonso*, 104 F.4th 815, 823 (11th Cir. 2024). This challenge thus fails as well.

Next, Montero-Monsalvo contends that the MDLEA's provision subjecting "stateless vessels" to U.S. jurisdiction is unconstitutional on its face because it applies to vessels that are not "stateless" under customary international law. *See* Mot. to Dismiss at 3–4, 13–14. While the MDLEA does apply to "vessels without nationality," 46 U.S.C. § 70502(c)(1)(A), that was not the basis for U.S. jurisdiction over the *Maria Purisima*. Instead, U.S. authorities exercised jurisdiction with the consent of the Venezuelan government. *See* 46 U.S.C. § 70502(c)(1)(C); Bartram Cert. ¶ 4(e). And in any event, "the Felonies Clause is not limited by customary international law." *Alfonso*, 104 F.4th at 826.

Finally, Montero-Monsalvo maintains that his prosecution violates due process because his conduct lacked a nexus with the United States. Mot. to Dismiss at 15–20. But as he concedes, Eleventh Circuit precedent forecloses this argument. *See, e.g.*, *United States v. Campbell*, 743 F.3d 802, 812 (11th Cir. 2014); Mot. to Dismiss at 15, 20. There is no due process problem requiring dismissal of the indictment.

## IV.  CONCLUSION

Accordingly, Montero-Monsalvo's motion to dismiss (Doc. 28) is **DENIED.**

**ORDERED** in Tampa, Florida, on October 21, 2024.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge